IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

Christopher A. McLaughlin,      :

    Plaintiff,              :

  v.                              :       Case No.  2:11-cv-454

Michael J. Astrue,              :       JUDGE JAMES L. GRAHAM
Commissioner of Social Security,        Magistrate Judge Kemp

    Defendant.              :

<u>REPORT AND RECOMMENDATION</u>

I. <u>Introduction</u>

Plaintiff, Christopher A. McLaughlin, filed this action seeking review of a decision of the Commissioner of Social Security denying his applications for disability insurance benefits and supplemental security income.  Those applications were filed on July 19, 2006, and alleged that plaintiff became disabled on April 1, 2006 due to mental impairments.

After initial administrative denials of his claim, plaintiff was given a hearing before an Administrative Law Judge on January 20, 2010.  In a decision dated April 16, 2010, the ALJ denied benefits.  That became the Commissioner's final decision on March 25, 2011, when the Appeals Council denied review.

After plaintiff filed this case, the Commissioner filed the administrative record on August 2, 2011.  Plaintiff filed his statement of specific errors on August 24, 2011.  The Commissioner filed a response on September 26, 2011.  Plaintiff filed a reply on October 12, 2011, and the case is now ready to decide.

II. <u>The Lay Testimony at the Administrative Hearing</u>

Plaintiff's testimony at the administrative hearing is found at pages 4 through 22 of the record.  Plaintiff, who was 28 years old at the time of the hearing and is a high school graduate,

testified as follows.

After high school, plaintiff had some on-the-job training with his uncle doing wood finishing, and he also served in the Marines for almost two years.  He did work for a few days in 2008 stacking boxes at a factory but quit that job.  Before 2006, he had worked as a laborer at a plastics plant.  He left that job for reasons related to his psychological condition.  He also worked in customer service at Kaufman's, but was fired from that job.

Plaintiff testified that he has had psychological difficulties all of his life.  He believed his diagnoses included bipolar disorder and an antisocial personality.  He had a history of marijuana use but had attained sobriety about ten months before the hearing.  He also has a tendency to get into fights when he is around other people.  Other people make him nervous.  He takes a number of medications but needs to be reminded to do so.

### III.  The Medical Records

The medical records in this case are found beginning on page 244 of the administrative record.  They can be summarized as follows.

Plaintiff was hospitalized in 2003 after taking an overdose of prescription medications.  The discharge note indicated a "profound history of substance abuse."  He first sought mental health treatment at age 14 or 15 and was treated for depression and anger.  He was discharged from the Marines after being described as a "treatment failure."  He reported difficulty concentrating in school and appeared to suffer from a conduct disorder, an antisocial personality disorder, and both depressive and manic episodes, as well as a history of abuse of various drugs and alcohol, including dependence on marijuana and LSD.  He was treated with Lithium, which relieved his mania.  He was

directed to seek treatment from Netcare upon release. (Tr. 246-49).

Chronologically, the next medical record is a report of a consultative examination performed for the Bureau of Disability Determination in 2006. Plaintiff reported his work history, indicating that he was looking for work but that he was having trouble leaving his house and that being around people was stressful. He admitted to being dependent on marijuana. He had not taken Lithium for more that two years. His memory was good and he was focused to the interviewing. He admitted to being hypersensitive, guarded and paranoid, and to carrying a weapon with him at all times. The examiner, Mr. Degli, diagnosed cannabis dependence, a depressive disorder not otherwise specified, and a paranoid personality disorder, and rated plaintiff's GAF at 45. He thought plaintiff was not capable of interacting with peers, supervisors, or the adult public in a competitive work setting, and said that plaintiff's ability to maintain attention, concentration, persistence and pace was "nil," as was his ability to withstand the stresses and pressures of a competitive workplace. (Tr. 255-58).

As plaintiff had testified, he received some substance abuse counseling in 2006 from Community Solutions Association. His psychological problems included oppositional behavior, inattention, impulsivity, and disturbed reality contact. That facility diagnosed him with cannabis dependence and borderline personality disorder, with a rule out diagnosis of PTSD. After an initial assessment he was accepted into a dual diagnosis program. However, as of January, 2007, there did not appear to be any treatment notes from such a program. (Tr. 264-75).

A state agency reviewer, Dr. Finnerty, reviewed the records and reported on January 16, 2007 that they indicated the presence of an affective disorder, a personality disorder, and a substance

abuse addiction disorder.  The affective disorder appears to have been characterized as mild, but the personality disorder included inflexible and maladaptive personality traits evidenced by pathologically inappropriate suspiciousness or hostility.  These disorders caused moderate restrictions in activities of daily living, in maintaining social functioning, and in maintaining concentration, persistence and pace, but had not caused any episodes of extended decompensation.  They did not affect plaintiff's ability to understand and carry out short and simple instructions or to sustain an ordinary routine without special supervision, but they did limit his ability to get along with others and to complete a workday or work week without interruptions from his symptoms and to perform at a consistent pace.  Dr. Finnerty explained that the more negative assessment from the consultative examiner appeared not to take into account the impact of plaintiff's chronic substance abuse and the fact that he showed rapid improvement when treated with medications or when remaining sober.  He thought plaintiff could do simple repetitive tasks in settings with superficial contact with others and without fast paced production quotas.  (Tr. 277-94).  That conclusion was later affirmed by another reviewer, Dr. Casterline.

The next group of records come from Valley Counseling, where plaintiff sought treatment after he found the substance abuse counseling provided by Community Solutions to be ineffective. Those records show that plaintiff was admitted to counseling on February 27, 2007 with a diagnosis of a mood disorder and a GAF of 50.  He reported difficulty sleeping and dealing with others. He also had trust issues and reported hearing voices, although he denied it was other people's voices he was hearing.  There is only one treatment note from 2007, and it does little more than repeat the diagnoses and indicate what medication was prescribed.

(Tr. 341-57).

Finally, the file contains some counseling notes from Six County, Inc. dated in 2008 and 2009. Collectively, they show that plaintiff's mood improved slightly with medication, that he was still drinking occasionally, that he was depressed, angry and paranoid, that he did report hallucinations and hearing voices, that he had fleeting thoughts of suicide, that his marijuana intake had gradually been reduced (although he was having some withdrawal symptoms), that he spent 70 days in jail, and that he was going to be started on new medications. (Tr. 361-78).

### IV. The Vocational Testimony

Mr. Kiger, a vocational expert, also testified at the administrative hearing. His testimony begins at page 25. He noted that plaintiff had worked as an inspector, a customer service representative, and a general laborer. The jobs were either light or medium, and either unskilled or semi-skilled. If he were limited as described in Exhibit 8F, the evaluation done by Dr. Finnerty, the only job he might be able to return to would be the laborer job, and that would depend upon how much he had to interact with others. His specific testimony on this point was that he did not know enough about plaintiff's past laborer job to judge how much interaction with others it required, but that in "[s]ome laborer positions you're pretty much on your own. You may have another person or two that are in the vicinity, but they're not right next to you. I mean, they vary, those type of positions." (Tr. 27). If, however, plaintiff was limited to the extent he stated in his testimony, he could not work.

### V. The Administrative Law Judge's Decision

The Administrative Law Judge's decision appears at pages 41 through 51 of the administrative record. The important findings in that decision are as follows.

The Administrative Law Judge found, first, that plaintiff

-5-

met the insured requirements of the Social Security Act through September 30, 2010. Next, he found that plaintiff had not engaged in substantial gainful activity from his alleged onset date of April 1, 2006 through the date of the decision. As far as plaintiff's impairments are concerned, the ALJ found that plaintiff had severe impairments including personality disorder with paranoia, borderline and anti-social features, substance abuse disorder currently in early remission, post traumatic stress disorder, and depression. The ALJ also found that these impairments did not meet or equal the requirements of any section of the Listing of Impairments (20 C.F.R. Part 404, Subpart P, Appendix 1).

Moving to the next step of the sequential evaluation process, the ALJ found that plaintiff had the residual functional capacity to perform a full range of work at all exertional levels and could do simple to more complex tasks, was able to concentrate when not abusing alcohol or drugs, and had what the administrative decision described as a "marked ability to work and deal with people secondary to his personality disorder as complicated historically by the abuse of drugs." (Tr. 45). He could handle low stress work without high production standards if he refrained from substance abuse. The ALJ accepted the vocational expert's testimony that someone with such limitations could perform plaintiff's past work as a general laborer. As a result, the ALJ concluded that plaintiff had not demonstrated an entitlement to benefits.

VI. Plaintiff's Statement of Specific Errors

In his statement of specific errors, plaintiff raises the following issues. First, he argues that the ALJ erred by posing an incomplete hypothetical to the vocational expert and by substituting his own lay opinion for that of the expert. He also argues that the ALJ should have found that his impairment met

Section 12.08 of the Listing of Impairments, which deals with personality disorders. The Court reviews the administrative decision under this legal standard:

<u>Standard of Review.</u> Under the provisions of 42 U.S.C. Section 405(g), "[t]he findings of the Secretary [now the Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion'" <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971) (quoting <u>Consolidated Edison Company v. NLRB</u>, 305 U.S. 197, 229 (1938)). It is "'more than a mere scintilla.'" <u>Id</u>. <u>LeMaster v. Weinberger</u>, 533 F.2d 337, 339 (6th Cir. 1976). The Commissioner's findings of fact must be based upon the record as a whole. <u>Harris v. Heckler</u>, 756 F.2d 431, 435 (6th Cir. 1985); <u>Houston v. Secretary</u>, 736 F.2d 365, 366 (6th Cir. 1984); <u>Fraley v. Secretary</u>, 733 F.2d 437, 439-440 (6th Cir. 1984). In determining whether the Commissioner's decision is supported by substantial evidence, the Court must "'take into account whatever in the record fairly detracts from its weight.'" <u>Beavers v. Secretary of Health, Education and Welfare</u>, 577 F.2d 383, 387 (6th Cir. 1978) (quoting <u>Universal Camera Corp. v. NLRB</u>, 340 U.S. 474, 488 (1951)); <u>Wages v. Secretary of Health and Human Services</u>, 755 F.2d 495, 497 (6th Cir. 1985). Even if this Court would reach contrary conclusions of fact, the Commissioner's decision must be affirmed so long as that determination is supported by substantial evidence. <u>Kinsella v. Schweiker</u>, 708 F.2d 1058, 1059 (6th Cir. 1983).

Plaintiff's first argument, as described in his statement of errors and in the reply brief, can be summarized as follows. The hypothetical question posed to the vocational expert asked him to assume that plaintiff's limitations were those described in Exhibit 8F, the residual functional capacity form completed by

-7-

Dr. Finnerty, the state agency reviewer.  In response, the
vocational expert expressed some hesitancy, couching his answer
in terms of possibilities.  After the hearing, in the
administrative decision, the ALJ found that plaintiff suffered
from a "marked" impairment in his ability to maintain social
functioning, which is a different finding on that subject from
that contained in Exhibit 8F.  Because the vocational expert
never answered a question which asked him to assume that
particular limitation, plaintiff argues that the ALJ could not
properly rely on the vocational expert's testimony in terms of
whether he could return to his prior job as a laborer.

The Commissioner counters this argument by noting that
despite the difference in Dr. Finnerty's assessment of
plaintiff's abilities in the area of social functioning and the
ALJ's assessment, the ALJ made it clear that he concluded that
plaintiff could still perform work which required only
superficial interaction with others.  Because that was also Dr.
Finnerty's conclusion, the Commissioner argues that there was no
material discrepancy between the question which the vocational
expert answered and any question which would have been based on
the ALJ's findings, so that his testimony was a reliable basis on
which to conclude that plaintiff could do his past relevant work.

There is little question that this is not a perfect
administrative record.  In fact, it appears that the
administrative decision incorrectly substituted the word
"ability" for the word "inability" in the key finding about
plaintiff's limitations in the area of working and dealing with
people; the finding that plaintiff had a marked "ability" in this
area makes no sense, since the adjective "marked" applies only to
inabilities and not abilities.  Further, the ALJ, in using the
modifier "marked," was presumably referring to that category of
limitation as it is described in the applicable regulation,

which, in this case, is found in the preamble to Section 12.00 of the Listing of Impairments.  There, a marked limitation in any area is described as one which is "more than moderate but less than extreme" and which reflects a "degree of limitation [which] interfere[s] seriously with your ability to function independently, appropriately, effectively, and on a sustained basis."  In the area of maintaining social functioning, that preamble notes that no specific set of behaviors is encompassed by the definition, but, as an example, someone who is "highly antagonistic, uncooperative, or hostile" may have a marked impairment in social functioning even if such behavior is tolerated by some people because it is "not acceptable in other social contexts."  Given this definition, it is somewhat confusing that the ALJ found that the only specific restriction on plaintiff's work abilities due to his "marked" limitation was the need to avoid jobs which required "high levels of personal interaction."  (Tr. 44).  That is either equivalent to, or less restrictive than, Dr. Finnerty's conclusion that plaintiff could perform work "in settings with superficial interactions with others," Tr. 294, yet Dr. Finnerty rated plaintiff's impairment in the area of maintaining social functioning as only moderately limited rather than marked.  This internal inconsistency suggests that a remand for clarification, rather than an affirmance despite the evident inconsistency in the ALJ's findings, is warranted.

In addition to this inconsistency, there are other troubling aspects about the way in which the ALJ dealt with plaintiff's social interaction limitations.  For example, Dr. Finnerty's views about plaintiff's limitations in the area of social functioning, and his rejection of the consultative examiner's more pessimistic view, appears to be based in part on a comparison of plaintiff's abilities with or without consideration

of his substance abuse.  That is, Dr. Finnerty stated that the consultative examiner "appears to ignore any possible impact from the [claimant's] chronic substance use."  (Tr. 294).  He made the same comment about plaintiff's depression and manic episodes and noted that his other "characterological concerns" were overlaid "on top of serious substance abuse dependence as a factor in [plaintiff's] difficulties."  Id.  Nevertheless, pointing out that plaintiff had improved rapidly with treatment in the past, Dr. Finnerty then reached his own conclusions about plaintiff's work capabilities, although it is not entirely clear whether those conclusions reflect how well plaintiff could perform if he stopped his substance abuse, or with his substance abuse. Similarly, the ALJ's decision is replete with reference to substance abuse, but not clear on how the ALJ's views of plaintiff's substance abuse problems factored into the ultimate decision, notwithstanding the regulatory mandate that in a case where substance abuse is present and may be disabling, the Commissioner must determine if substance abuse is a "contributing factor material to the determination of disability" and "whether we would still find you disabled if you stopped using drugs or alcohol."  20 C.F.R. §404.1535.

Additionally, the vocational expert's testimony was, as plaintiff points out, phrased in terms of possibilities, clearly reflected a lack of information about the specific laborer job plaintiff performed, and, at best, supported a finding that the degree of personal interactions in such jobs varies, and that there are some in which "you are pretty much on your own."  It is not entirely clear whether this fairly imprecise description of such jobs comports with either Dr. Finnerty's or the ALJ's description of plaintiff's social interaction limitations.  A remand will assist in resolving these conflicts and ambiguities and produce a decision much more susceptible to meaningful

-10-

judicial review.  Cf. McHugh v. Astrue, 2011 WL 6130824, *9 (S.D. Ohio Nov. 15, 2011), adopted and affirmed 2011 WL 6122758 (S.D.Ohio Dec. 8, 2011)("'"[W]here the ALJ's decision ... is so poorly articulated as to prevent meaningful review, the case must be remanded.'"), quoting Steele v. Barnhart, 290 F.3d 936, 940 (7th Cir. 2002).

Plaintiff has also raised an issue about whether the ALJ was required to find, in accordance with the consultative examiner's opinion, that he met the requirements for disability set forth in Section 12.08 of the Listing of Impairments.  Plaintiff criticizes the ALJ for crediting the opinion of Dr. Finnerty instead and for failing to give adequate reasons why more weight was assigned to Dr. Finnerty's opinion even though he never examined the plaintiff.

Although the "good reasons" rule found in 20 C.F.R. §404.1527(d) does not apply to the opinions of non-treating sources, such opinions must be considered by an ALJ, and the failure to discuss them at all can be grounds for a remand.  See, e.g., Karger v. Comm'r of Social Security, 414 Fed. Appx. 739 (6th Cir. February 10, 2011).  The ALJ did discuss the consultative examiner's findings, however, indicating that he took them into account but gave them little weight due primarily to the fact that Mr. Degli did not separate out the impact of plaintiff's substance abuse from the impact of his other impairments.  However, that is not necessarily the correct way to treat such an opinion if it is otherwise credible; rather, §404.1535 seems to suggest that the ALJ should make findings about disability taking into account, as Mr. Degli did, the impact of substance abuse, and, if that led to a finding of disability, determining the extent to which plaintiff remained impaired without consideration of his substance abuse.  That procedure was not followed here.  Consequently, while the Court

-11-

cannot find that the ALJ was absolutely required to adopt Dr. Degli's findings and to determine that plaintiff actually qualified for benefits under Section 12.08 of the Listing, it would appear that on remand the ALJ should articulate more clearly if he credited the examiner's opinions and then subtracted the impact of plaintiff's substance abuse, or whether he did not credit Dr. Degli's findings; if the latter is so, there should be enough of an explanation for why that occurred so that the Court can perform the required substantial evidence review, even if the ALJ need not provide the same amount of reasoning as when rejecting the opinion of a treating source.

## VII.   Recommended Decision

Based on the above discussion, it is recommended that the plaintiff's statement of errors be sustained to the extent that this case be remanded to the Commissioner for further proceedings pursuant to 42 U.S.C. §405(g), sentence four.

## VIII.   Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s).  A judge of this Court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made.  Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions.  28 U.S.C. §636(b)(1).

The parties are specifically advised that failure to object to the Report and Recommendation will result in a

waiver of the right to have the district judge review the Report and Recommendation <u>de novo</u>, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. <u>See Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>United States v. Walters</u>, 638 F.2d 947 (6th Cir. 1981).

                                            /s/ Terence P. Kemp
                                            United States Magistrate Judge