```
                IN THE UNITED STATES DISTRICT COURT
                 FOR THE SOUTHERN DISTRICT OF OHIO
                            EASTERN DIVISION
```

Christopher A. McLaughlin,          :

      Plaintiff,              :

     v.                            :     Case No. 2:11-cv-454

Michael J. Astrue,                  :     JUDGE JAMES L. GRAHAM
Commissioner of Social Security,          Magistrate Judge Kemp

      Defendant.              :


## OPINION AND ORDER

On February 4, 2012, the Magistrate Judge issued a Report and Recommendation in this social security case recommending that the plaintiff's statement of errors be sustained to the extent that this case be remanded to the Commissioner pursuant to 42 U.S.C. §405(g), sentence four. On February 28, 2012, the Commissioner filed timely objections to that recommendation. Plaintiff responded on March 16, 2012. For the following reasons, the objections will be overruled.

### I.

When objections are received to a Magistrate Judge's Report and Recommendation on a dispositive matter, the assigned District Judge "shall make a de novo determination ... of any portion of the Magistrate Judge's disposition to which specific written objection has been made ...." Fed.R.Civ.P. 72(b). After review, the District Judge "may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the Magistrate Judge with instructions." Id.; see also 28 U.S.C. § 636(b)(1)(B). General objections are insufficient to preserve any issues for review "[a] general objection to the entirety of the Magistrate's report has the same effects as would a failure to object." Howard v. Secretary of Health and Human Servs., 932 F.2d 505, 509 (6th Cir.1991).

II.

Plaintiff applied for disability benefits at a fairly young age.  He was only 28 at the time of the administrative hearing, which was held in 2010.  He claimed that psychological problems prevented him from working, and testified that those problems had cost him jobs in the past.  Medical records showed a profound history of substance abuse as well as a history of treatment for mental health problems beginning in plaintiff's teenage years.  He was variously diagnosed as suffering from depression, anger, and a paranoid personality disorder, and medical notes recorded symptoms such as hallucinations, hearing voices, thoughts of suicide, oppositional behavior, inattention, impulsivity, and disturbed reality contact.  One consultative examiner did not think plaintiff could work at all; a state agency reviewer reached the opposite conclusion, noting that the consultative examiner did not, in the reviewer's opinion, account for the fact that many of plaintiff's symptoms could be attributed to substance abuse and that they decreased in severity once he was sober and taking medication.

The Administrative Law Judge found that plaintiff suffered from personality disorder with paranoia, borderline and anti-social features, substance abuse disorder currently in early remission, post traumatic stress disorder, and depression, but concluded that he could still handle some low stress work without high production standards if he refrained from substance abuse.  Because a vocational expert testified that someone with those limitations could work as a general laborer, which was a job plaintiff had performed in the past, the Administrative Law Judge denied the claim for benefits.

The Report and Recommendation found this decision was plagued by inconsistencies in its reasoning process, noting that the key finding about plaintiff's ability to interact with others was apparently misstated by the ALJ (he characterized it as

marked "ability" to relate to others, when he apparently meant to find that plaintiff had a marked "inability" in that area), and that it was difficult to tell exactly how the ALJ reached his conclusion regarding plaintiff's residual functional capacity or what he meant when he posed the key hypothetical question to the vocational expert.  The Report and Recommendation also identified problems with the ALJ's approach to plaintiff's substance abuse disorder and the effect it had on his ability to work, noting that the administrative decision often mentioned substance abuse as a factor but did not follow the Commissioner's own regulations about how substance abuse is to be evaluated in terms of whether its effects are disabling, and whether, if those effects are eliminated, a claimant would still be disabled taking other factors into account.  Those inconsistencies were exacerbated by the fact that the vocational expert's testimony was couched in terms of what might be "possible" in the workplace with respect to avoiding interaction with others, and it was not clear how that testimony lined up with either the ALJ's or the state agency reviewer's evaluation of plaintiff's difficulties in that area.  The Report and Recommendation concluded by stating that

> [a] remand will assist in resolving these conflicts and ambiguities and produce a decision much more susceptible to meaningful judicial review.  Cf. McHugh v. Astrue, 2011 WL 6130824, *9 (S.D. Ohio Nov. 15, 2011), adopted and affirmed 2011 WL 6122758 (S.D.Ohio Dec. 8, 2011)("'"[W]here the ALJ's decision ... is so poorly articulated as to prevent meaningful review, the case must be remanded.'"), quoting Steele v. Barnhart, 290 F.3d 936, 940 (7th Cir. 2002).

Report and Recommendation, ECF No. 13, at 10-11.

                                III.

The Commissioner has objected to the recommendation that the case be remanded for a more clearly reasoned and articulated decision.  While acknowledging that the Report and Recommendation "reasonably points out that the ALJ's decision was less-than-

perfect," the Commissioner argues that "perfection is not the relevant standard."  Objections, ECF No. 14, at 1.  The Commissioner asserts that plaintiff's limitations were either accurately conveyed to the vocational expert, or overstated, and that either way, the vocational expert testified that plaintiff could return to his past employment.  The Commissioner also contends that the ALJ did not actually consider plaintiff's drug use as a factor in deciding what plaintiff's residual functional capacity actually was, but only in finding his testimony to be less than credible.  Consequently, the Commissioner concludes that the ALJ's decision was based on substantial evidence and should be affirmed.  In response, plaintiff argues that the ALJ did make a finding about the ability to interact with others which was at odds both with the residual functional capacity determined by Dr. Finnerty, the state agency reviewer, and with the hypothetical question posed to the vocational expert, and that this error alone requires a remand.

IV.

   Focusing on this last issue first, the Court agrees that the way in which the ALJ both phrased his questions to the vocational expert and articulated his findings about plaintiff's ability to interact with others creates very serious difficulties for the Court in understanding the record.  The precise question posed to the vocational expert asked him to assume the limitations described in Exhibit 8F, which is Dr. Finnerty's report.  Those limitations included "moderate" restrictions in "[t]he ability to work in coordination with or proximity to others without being distracted by them," to "interact appropriately with the general public," to "accept instructions and respond appropriately to criticism from supervisors," to "get along with coworkers or peers without distracting them or exhibiting behavioral extremes," and "to maintain socially appropriate behavior ...."  (Tr. 291-92).  By contrast, assuming that the ALJ's use of the

word "ability" was incorrect and that in his finding he meant "inability," the ALJ found as a fact that plaintiff had a "marked [in]ability to work and deal with people secondary to his personality disorder as complicated historically by the abuse of drugs." (Tr. 45). Because all of the categories quoted from Dr. Finnerty's report fall under the general heading of how well a claimant is able to deal with people (co-workers, supervisors, and the general public), it may be that the ALJ disagreed with Dr. Finnerty as to the severity of plaintiff's ability to function in as many as five of the areas reflected in Exhibit 8F. Nevertheless, the vocational expert was not asked any questions about someone with marked, as opposed to moderate, limitations in those areas.  Even then, he hesitated in responding to the hypothetical question, admitting that he did not know enough about the specific laborer job which plaintiff had performed to evaluate whether plaintiff could still do that particular job. Ultimately, the vocational expert testified that in "some" laborer positions - and he did not specify how many, or what they were - a worker was "pretty much out on [his] own," although such positions "vary" in how closely one must work with others.

    The Commissioner's position is that in order for plaintiff to be able to do his prior job, he need only be able to perform it as it is generally performed in the economy rather than in the exact way his job functioned.  That is true.  But, had the vocational expert been told what the ALJ's view of plaintiff's ability to get along with others was - and a marked inability to do that is much more pronounced than a moderate inability, according to the Listing of Impairments, Section 12.00, which defines a marked impairment as one which "interfere[s] seriously with your ability to function independently, appropriately, effectively, and on a sustained basis" - he might well have given different testimony.  There is no way to know, because he was not asked that question.  The Court does not believe his general

response that in some laborer positions, one is "pretty much out on your own," is the equivalent of a response that no matter how seriously limited someone is in his ability to deal appropriately with others in the workplace - be it supervisors, co-workers, members of the public, or all three - there are still laborer jobs that person can do. The record simply does not support the determination made by the ALJ, and when that is so, remand is required. This conclusion makes it unnecessary to reach the other grounds set forth in the Report and Recommendation, but the Court generally concurs that the underlying decision is not just "less-than-perfect," as the Commissioner contends, but sufficiently difficult to understand that the Court's ability to review the decision will be enhanced greatly by a more carefully crafted opinion which clearly delineates, among other things, what role plaintiff's history of substance abuse actually played in the ALJ's decision-making process.

VI.

For all of these reasons, and after a *de novo* review of those portions of the Report and Recommendation to which plaintiff objected, the Court **OVERRULES** the objections (#14) and **ADOPTS AND AFFIRMS** the Report and Recommendation (#13). The plaintiff's statement of specific errors (#10) is **SUSTAINED** and to the extent that this case is **REMANDED** to the Commissioner for further proceedings pursuant to 42 U.S.C. §405(g), sentence four.

**IT IS SO ORDERED.**

Date: April 30, 2012                     s/James L. Graham
                                         James L. Graham
                                         United States District Judge